UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No.: 3:07-CR-03 |
| | ) | (VARLAN/GUYTON) |
| ERIC DEWAYNE BOYD, | ) | |
| a/k/a "E" | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

This criminal case was before the Court on April 4, 2008, for a final pretrial conference. The Court heard the arguments of counsel on several pending pretrial motions and issued oral rulings on those motions at the hearing. Defendant Boyd's Motion to Dismiss Based Upon Racially Biased Prosecution or in the Alternative, Motion to Grant Discovery of Materials Related to Biased or Selective Prosecution [Doc. 130; *see also* Doc. 131] requests that the Court dismiss the current indictment against him, and for his immediate release, on the grounds of race-based selective prosecution, or in the alternative to permit discovery regarding selective prosecution and postpone the trial to allow time for further investigation. The government filed a response in opposition [Doc. 134]. The Court orally DENIED defendant's motion for the reasons stated at the hearing and it now further explains its ruling as follows:

## I. Factual Background

Defendant argues that Daphne Sutton, a white woman, rendered substantial aid to Lemaricus Davidson that was greater than the assistance allegedly rendered by defendant, and that such aid is well known to the government, but that Sutton was not indicted because of her race and her familial ties to the Knoxville Police Department ("KPD"). The government argues that Sutton was not similarly situated with the defendant because her conduct did not amount to a federal crime and that there is no evidence to support the assertion that racial animus motivated its decision to indict the defendant. The government also argues that there is no support for defendant's argument that the decision not to indict Sutton was related to her familial ties to KPD.

### A. Defendant's Version of the Facts

Lemaricus Davidson faces charged in state court for first degree murder and carjacking of Channon Christian and Christopher Newsom. Defendant notes Daphne Sutton was Davidson's girlfriend and that they lived together at the house at 2316 Chipman Street, Knoxville, Tennessee where Channon Christian's body was eventually found. Both Davidson's and Sutton's names were on the lease for the house on Chipman Street. On January 6, 2007, prior to the carjacking, Sutton went to a neighbor, Rhonda Dukes, with Davidson, George Thomas, and Letalvis Cobbins and asked to borrow rubber gloves. Davidson, Thomas, and Cobbins were dressed in black. When Dukes asked Sutton why she needed the gloves she stated, "all I know is that they said they were going to come back with money to get my car fixed." Defendant argued at the hearing that this is evidence that Sutton

knew that Davidson, Thomas, and Cobbins were planning on committing a robbery and that she had the opportunity to stop them.

Defendant states that before dawn on January 7, 2007, Davidson went to an apartment on Bridlewood Drive that was rented by Sutton's friends, Brandy Pressley and Cassie Suttles, in Channon Christian's SUV. Defendant does not believe that Davidson would have gone there unless Sutton was involved. Suttles reported that she saw the SUV that night and there is evidence that Sutton saw it as well.

Defendant states that Sutton visited the Chipman Street residence on January 2, 2007 while Channon Christian was held there and that Sutton received some of Christian's clothing and jewelry from Davidson. On the evening of January 7, 2007, Sutton drove Davidson from the Chipman Street house to the Bridlewood Drive apartment. A witness stated that he saw Davidson, Sutton, and another white female at the Chipman Street house and that one of the females left with a duffle bag and Davidson left with a garbage bag. Defendant states that Davidson stayed at the Brindlewood Drive apartment until Sutton drove him to defendant's mother's house on the night of January 9, 2007. Defendant states that phone records indicate that ten to twelve calls were made from Pressley's house to defendant. The last call was after 11:00 p.m. after Davidson was already at defendant's mother's house.

Channon Christian's SUV was found during the time Davidson was with Sutton. The discovery of the SUV led police to the Chipman Street house. At 1:42 p.m. on January 9, 2007, Channon Christian's body was found at the Chipman Street house. Shortly thereafter, local television stations reported the discovery of Christian's body. Sutton was interviewed

on January 9, 2007 and January 10, 2007, but did not disclose the whereabouts of Davidson. Defendant also notes that Sutton's uncle is a KPD officer.

B.      **Government's Version of the Facts**

The government states that though Sutton and Davidson once lived together at the Chipman Street house together, Sutton had moved out just prior to the weekend of January 6-7, 2007 because Davidson had been beating her. Sutton then began staying with Pressley and Suttles at their Bridlewood Street apartment. On January 7, 2007, Sutton went to the Chipman Street house to pick up some of her belongings, including some make-up she had left there. While there, Davidson gave Sutton clothing and jewelry of Channon Christian which he presented to Sutton as "gifts" that he had purchased for her. The government states that Sutton had no idea that these were Christian's belongings. According to the government, while Sutton was at the Chipman Street house, she did not see Channon Christian or know that she was there. The government states that the evidence will show that Sutton was not permitted to go into the bathroom to retrieve her make-up because Vanessa Coleman was holding Channon Christian there. Sutton left the house after being there only for a short period of time and went back to the Bridlewood Drive apartment.

Later that evening, Davidson rode to the Bridlewood Drive apartment in a grey or silver SUV. The government states that the evidence will show that Davidson met with Sutton and then left. Sutton did not know who was driving the SUV, where it came from, or that a crime had been committed. On the night of January 8, 2007, Davidson went back

4

to the Bridlewood Drive apartment and stayed overnight with Sutton. Channon Christian's body had not yet been discovered at this point.

The government states that on Tuesday afternoon, Sutton's mother called her and told her that a body was found at the Chipman Street house. After Sutton heard this news, Sutton, Pressley, and Suttles decided that Davidson should no longer stay with them. At Davidson's request, they waited until after dark and gave him a ride to a park near Ridgebrook. After that point, Sutton had no additional face-to-face contact with Davidson.

The government also states that one of the two Assistant United States Attorneys AUSA) assigned to this case had never heard that Sutton was related to a KPD officer and the other AUSA only vaguely remembers hearing something about one witness being related to an officer. The government further states that this familial relationship was never discussed in its office and that it played no role in the investigation or indictments in this case.

**II.    Analysis**

Prosecutorial discretion is broad and there is a strong presumption that prosecutors have properly discharged their duties. *Oyler v. Boles*, 368 U.S. 448, 456 (1962). However, this discretion is bound by constitutional constraints, which forbid a decision based on "an unjustifiable standard such as race, religion, or other arbitrary classifications." *Id.*; *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996) .

A defendant seeking to show selective prosecution must offer clear evidence that (1) the defendant has been singled out for and charged while others who are similarly situated

have not been prosecuted and (2) there exists some evidence of an improper motivation in deciding to prosecute. *Armstrong*, 517 U.S. at 465; *see also United States v. Jones*, 399 F.3d 640, 645 (6th Cir. 2005) (citations omitted). These prongs originate from ordinary due process standards requiring the defendant to show that the prosecutorial policy had a discriminatory effect and was motivated by a discriminatory purpose. *Id.* The first prong can be met by showing that a similarly situated individual of another race was could have been prosecuted but was not. *Id.* at 469. The second prong is met by showing that the prosecution of defendant is invidious or in bad faith, that is, "based upon such impermissible considerations as race, religion or the desire to prevent his exercise of constitutional rights." *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974).

The burden for determining whether a motion for discovery on the issue of selective prosecution should be granted is lower than the standard for dismissal on the basis of selective prosecution; however, this standard is still rigorous. *Armstrong*, 517 U.S. at 468-69. To meet this burden, the defendant must show that there is some evidence tending to show the existence of discriminatory intent and effect. *Id.* at 465 (quoting *Berrios*, 510 F.2d at 1211); *Jones*, 159 F.3d at 978. Stated another way, the defendant must "take the question [of selective prosecution] past the frivolous state." *United States v. Hazel*, 696 F.2d 473, 475 (6th Cir. 1983) (citation omitted). The reason for this lower standard is that "most of the relevant proof in selective prosecution cases will normally be in the Government's hands." *Wayte v. United States*, 470 U.S. 598, 624 (1985) (Marshall, J., dissenting).

The Court determines that the defendant has not clearly established the elements of selective prosecution nor has it presented a sufficient level of evidence such as to entitle defendant to further discovery on the issue. Thus, the Court will not dismiss the charges or permit further discovery.[1]

More specifically, the Court determines that Sutton was not similarly situated with defendant and thus, defendant has not met the first prong of the *Armstrong* test for selective prosecution. According to the facts presented to the Court through defendant's motion, the government's response, and both sides' oral arguments, at most Sutton knew that a murder had occurred once she learned that a body was found at the Chipman Street house on the afternoon of January 9, 2007. Shortly after learning about the body, Sutton made Davidson leave the apartment where she was staying. The government admits that it may have been prudent for her to call the police. However, as the government further notes, her failure to do so, while perhaps giving rise to allegations of a violation of a state law, does not amount to a federal crime.[2] Because defendant did not show that Sutton could have been prosecuted for a federal crime, she was not similarly situated.

---

[1]At the time the government filed its brief and as of the pretrial conference on April 4, 2008, the government expected to provide defendant with *Jencks* material prior to trial, including statements and testimony transcripts of Daphne Sutton and others. [*See* Doc. 134.]

[2]*Compare* Tenn. Code Ann. § 39-11-411 (accessory after the fact), and § 39-13-202 (first degree murder), *with* 18 U.S.C. § 3 (accessory after the fact requiring knowledge of an offense against the United States). Murder is a common law offense, codified in some states including Tennessee, but is not a federal crime unless it occurs on federal property or in a few other limited circumstances. *See* 18 U.S.C. §§ 1111-1122 (federal homicide statutes).

Furthermore, the Court finds that defendant has not presented evidence that the government's indictment of defendant was motivated by a racial animus or another improper purpose and thus, has not met the second prong of the *Armstrong* test. In terms of racial animus, the defendant has made absolutely no showing that race was a factor considered by the government, other than pointing to the respective races of the defendant and Sutton. Additionally, the defendant has not shown that any other improper motive influenced the government's decision-making. Defendant seems to ask the Court to presume that the government did not indict Sutton simply because she had an uncle who was once in law enforcement without making any showing that the government knew or considered this fact. Because the defendant has not presented any evidence of an improper motive, he has not met the second part of the *Armstrong* test.

## III. Conclusion

For the reasons stated herein and at the final pretrial conference on April 4, 2008, Defendant Boyd's Motion to Dismiss Based Upon Racially Biased Prosecution or in the Alternative, Motion to Grant Discovery of Materials Related to Biased or Selective Prosecution [Docs. 130] is **DENIED**. Nothing in this order precludes defendant from renewing his motion should he deem it proper at a later time.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE