UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:07-CR-3 |
| | ) | (VARLAN/GUYTON) |
| ERIC DEWAYNE BOYD, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This criminal case is before the Court on the government's oral motion to seal trial exhibits [Docket Entry dated April 16, 2008] and the government's written Motion to Seal Certain Trial Exhibits [Doc. 155], in which the government requests that the Court enter an order sealing Government Exhibits 8B, 10, 11, 17, 20, 33, 45, 46, 46A. Defendant has not responded and the time for doing so has now passed.

**I.   Relevant Facts**

The defendant was charged as an accessory after the fact and misprision of a felony for his conduct related to a fatal carjacking which took place in January 2007. Others allegedly involved in the commission of the carjacking have been indicted in state court and are awaiting trial. Defendant's trial began in this Court on April 7, 2008. During trial, the government introduced multiple exhibits in support of its case including: photographs of the bodies of the victims of the carjacking as they were found (exhibits 11 and 17); a video recording of defendant's statement to the police (exhibit 33); records relating to the vehicle

driven by one of the victims of the carjacking (exhibit 20); and telephone records of various individuals (exhibits 8B, 10, 45, 46, 46A, and 47). On April 16, 2008, the jury returned a verdict finding defendant guilty of both Counts One and Two of the Second Superseding Indictment. After the jury returned its verdict, the government made an oral motion to seal trial exhibits. The Court instructed the government to file a memorandum in support of its position within seven days and gave the defendant an equivalent amount of time to respond.

## II. Analysis

There is both a constitutional right of access to judicial proceedings and a common law right. *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589 (1978). However, the right is not absolute under either source. *Id.*

### A. Constitutional Right

The constitutional right of access to a criminal trial stems from both the First Amendment freedom of press and the Sixth Amendment right to a public trial. It is clear that under the First Amendment, the public and the press have "a right to be present" and the "rights to speak and to publish concerning what takes place at a trial." *Beckham v. Post-Newsweek Stations, Mich., Inc.*, 789 F.2d 401, 406 (6th Cir. 1986) (quoting *Richmond Newspapers, Inc. v. Virginia*, 488 U.S. 555, 576-78 (1982). In regard to the Sixth Amendment right, "[t]he requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and report what they have observed." *Warner Commc'ns., Inc.*, 435 U.S. at 610. The Constitution does not give the public or the

media the right of physical access to tapes and transcripts of what takes place during trial. *Beckham*, 789 F.2d at 409 (quoting *Warner Commc'ns*, 435 U.S. at 609). Accordingly, when the media and public are given unfettered access to attend all proceedings and members of the media are permitted to publish what they have heard and seen in the courtroom, there is no constitutional violation. *See Beckham*, 789 F.2d at 407.

During the trial in this case, there were no restrictions on the public's and the media's right to be present and observe the court proceedings. Even during the beginning stages of the bifurcated jury selection process, when space was limited due to the large number of prospective jurors, the Court played the audio from the courtroom over the speaker system in another courtroom so that members of the public and media were able to listen. During the entirety of the trial, seats were reserved for members of the media in the front row of the gallery, and members of the media were permitted to take notes and make sketches of court proceedings. Exhibits admitted into evidence were shown on large screens facing the gallery. The public and media viewed and heard the video of defendant's statement to police just as the jury did. Though the courtroom was near capacity at some points during the trial, aside from during the reading of the verdict, there was always extra space available. The public and the media were allowed unfettered access to the proceedings and, accordingly, there was no constitutional violation of the right of access to judicial proceedings.

### B. Common Law Right

In regard to the common law right of access to judicial records and documents, a trial court operates under a presumption in favor of access but has the discretion to withhold access if warranted by the facts and circumstances of a particular case. *Warner Commc'ns*, 435 U.S. at 599, 602. If the "potential for public benefit [is] less than the potential harm to the fair and orderly administration of criminal justice," the Court can prohibit the inspection and copying of trial exhibits. *Beckham*, 789 F.2d at 411. In balancing the public benefit and the fair and orderly administration of justice, factors for the court to consider include:

> [T]he court's supervisory powers, the amount of benefits to the public from the incremental gain in knowledge that would result from hearing the tapes themselves, the degree of danger to defendants or persons speaking on the tapes, the possibility of improper motives on the part of the media such as promoting public scandal or gratifying private spite, and any special circumstances in the particular case.

*Id.* at 409 (citing *Warner Commc'ns*, 435 U.S. at 599-603). Specific factors considered by the district court in *Beckham* in determining that it would not deny the right to copy documentary exhibits admitted into evidence at trial included that the records were business records that were not inflammatory in nature, they were not inaccurate, there was little danger of misinterpretation, there was no danger of harm to third parties, and many of the documents, including the business's proposal, contracts, and articles of incorporation were public records prior to trial. 789 F.2d at 412.

The exhibits that the government wishes to seal in this case fall into three general categories: defendant's videotaped statement (exhibit 33); photographs of the bodies of the

4

victims (exhibits 11 and 17); and documents containing private information about third parties (exhibits 8B, 10, 20, 33, 45, 46, and 46A). The Court will discuss the common law right to access the exhibits in each category in turn.

### 1. Defendant's Videotaped Statement

Exhibit 33 is a video-recording of the statement defendant made to police. The video includes defendant's statements about what Lemaricus Davidson told him about the carjacking, rape, and murders of Channon Christian and Christopher Newsom. The public would gain little additional value from viewing this tape outside of what the media reported during the course of the trial. Because the media was given preferential seating, two large screens were available for viewing, and many speakers throughout the courtroom played the audio of the interview, the media therefore had complete access to the video in the courtroom. Additionally, the angle from which the statement was filmed and image quality are not such that the public may learn much more from personally viewing defendant's demeanor or expressions beyond what the media was able to report from watching the video in open court.

Release of the tape, however, could cause great harm to the state proceedings involving Lemaricus Davidson, Letalvis Cobbins, George Thomas, and Vanessa Coleman (collectively "state court defendants"), all charged in state court with the underlying carjacking, rape, and murders. These state court defendants are still awaiting trial. Defendant Boyd's videotaped statement claims that Davidson admitted to some of the crimes

5

for which he is charged and mentioned some of the other defendants' involvement. Under the Federal Rules of Evidence, this information that Davidson told defendant Boyd could not be admitted into the evidence for the purpose of showing what Davidson did, but instead it was admitted only to show defendant Boyd's knowledge of Davidson's actions. Accordingly, the jury was given the following limiting instruction in regard to defendant's videotaped statements:

> You heard the videotaped statement the defendant gave to law enforcement. Defendant's statements about what Lemaricus Davidson told him are hearsay and thus, you may only use these statements for the purpose of determining the defendant's notice and knowledge of Lemaricus Davidson's involvement in the carjacking, not to determine whether the government has proved the elements of the carjacking against Lemaricus Davidson.

It is probable that the Knox Count Criminal Court trying the state court defendants' cases may find that defendant Boyd's statement to police is wholly inadmissible since defendant Boyd's knowledge is not a material element of any of the charged crimes against Davidson or the others. Thus, if the tape is copied and displayed beyond the extent to which it has already been done, the jury pool for the upcoming state trials could likely be tainted by exposure to information that is inflammatory and likely inadmissible at trial.

Release of defendant's statement could also serve to exacerbate the potential ill effects of pretrial publicity. Jury selection in this federal case spanned two and a half days due to the need ensure that the partiality of the prospective jurors had not been compromised by pretrial publicity. Of the 76 prospective jurors questioned, 72 stated they had heard at least something about the case or the underlying crimes. Approximately ten jurors were excused

6

for cause because they stated that had formed an opinion on the guilt of this defendant or that they could not set aside their feelings and render a decision based upon the evidence presented in court. It is likely that it will be even more burdensome to seat a jury for the state court trials for a number of reasons including the ongoing coverage, the venire in this case was selected from Knox County and surrounding counties while the venire for the state trials will be selected exclusively from Knox County, and the state court defendants are charged with the underlying violent crimes while defendant Boyd was not.

## 2. Photographs of the Bodies of the Victims

Exhibit 11 is a photograph of Christopher Newsom's body as it was found by the railroad tracks, exhibit 12[1] is a photograph of Christopher Newsom's covered body as it was removed from the scene, and exhibit 17 is a photograph of Channon Christian's body as it was found in the Chipman Street house. The factors that weighed in favor of release of the documentary exhibits in *Beckham* weigh against release of these photographs. The photographs are not standard business records, nor were they previously available to the public. While the United States attempted to introduce the least graphic photographs available, they still show portions of the victims' bodies, and any photograph of a victim of a violent crime is likely to be inflammatory in nature. Additionally, their release and resulting display and dissemination also could be traumatic to the family and friends of the

---

[1]The government did not request that this exhibit be sealed in its motion. However, due to its similarity to the other two photographs of the victims' bodies and the nature of the photograph, the Court will consider sealing it as it will the others.

7

victims, many of whom were visibly affected by the photographs as they were shown briefly at trial. Finally, as discussed above, with several related trials still pending, the increased publicity by release and dissemination of these photographs could impact the state court proceedings in Knox County pending as to the state defendants. Accordingly, exhibits 11, 12, and 17 will be sealed until further order of the Court.

### 3. Documents Containing Private Information About Third Parties

Exhibits 8B, 10, 45, 46, and 46A are phone records for various individuals including innocent third parties. These records display not only the phone numbers of the owners of the phone line, but also numbers from incoming and outgoing calls. Additionally, at least some of the records display the names and home addresses of the owners of the phone lines. Exhibit 20 is a record identifying the vehicle driven by Channon Christian and owned by her parents. This record includes the Christians' home address as well as other identifying information. Because disclosure of these records could cause great harm to the third parties who have personal information on the records, in order to protect their safety and privacy, the records would have to be redacted before they could be released. The phone records would have to be redacted to exclude all addresses and phone numbers and the vehicle record would have to be similarly redacted. Because any remaining information on these records would provide very little, if any, benefit to the public, and may still be harmful to third parties, exhibits 8B, 10, 20, 45, 46, and 46A will be sealed until further order of the Court.

### III. Conclusion

For the reasons stated herein, the Court finds that government's motions [Oral Motion docketed on April 16, 2008; and Doc. 155] are well-taken, and they are hereby **GRANTED**. The Clerk is directed to **SEAL** Trial Government Exhibits 8B, 10, 11, 12, 17, 20, 33, 45, 46, and 46A until further order of the Court.

IT IS SO ORDERED.

                                          s/ Thomas A. Varlan
                                          UNITED STATES DISTRICT JUDGE